**SPARGUR, and MAYFLOWER INSURANCE COMPANY, Plaintiffs, v. DAYTON POWER AND LIGHT CO. et, Defendants.**

Common Pleas Court, Montgomery County.

Nos. 109913, 109914.   Decided September 15, 1958.

Iddings, Jeffrey & Donelly, Dayton, for plaintiffs.

Landis, Ferguson, Bieser & Greer, Robert S. Newlin, Dayton, for defendant, The Dayton Power and Light Company.

Curtner & Brenton, Dayton, Wise, Roetzel, Maxon, Kelly and Andress, Akron, for defendant, Poston Construction Co.

Marshall & Smith, Dayton, for defendant, Poston Gas Lines, Inc.

Pickrel, Schaeffer & Ebeling, Dayton, for defendant, H. C. Huber Construction Company.

Vradelis & McCray, Dayton, for defendant, Southern Hills Pit, Inc.

## OPINION

By McBRIDE, J.:

As a result of an explosion and fire in a new home Mrs. Spargur was seriously burned. The residence and the household effects were totally destroyed. Four separate suits were filed· One for personal injuries, one for medical and similar expenses, and two for property damages in which the Spargurs joined with their insurers. The same attorney represents all of the plaintiffs in these four actions.

In each case a buckshot petition was filed against The Dayton Power and Light Company and four other defendants, builders and subcontractors, whom we shall describe as defendants number two through number five.

Two cases, No. 109911 and 109912, filed by the Spargurs individually, were consolidated and tried. Defendants number two through five were dismissed on motion for a directed verdict because of a failure to establish any negligence. This order was not appealed and is final. The Spargurs recovered judgments against The Dayton Power and Light Company totaling $135,000.00. These judgments are pending on appeal.

In the property damage cases, No. 109913 and 109914, defendants number two through number five filed supplemental answers alleging the splitting of the damages and res judicata as a result of their dismissal by direction and final order in the personal injury cases. By reply the joint plaintiffs admit the pendency of the other actions but otherwise entered a general denial, denying portions of the record in the consolidated cases.

By stipulation counsel agreed that the court recognize and consider the amended pleadings, the docket, and entries in the first two cases, which as indicated resulted in judgment for personal injuries in favor of the plaintiffs as to one defendant and in final judgment against the plaintiffs as to defendants number two through number five.

The property damage cases are submitted to the court on motions of the four defendants for judgment on the pleadings, supplemented by the above stipulation, in Cases No. 109913 and No. 109914.

The presence of five corporate defendants may have been necessary because of the inability of plaintiffs to ascertain the facts surrounding this unusual explosion and fire in a dwelling just ten days old. however their presence increased the length of the trial, some of which would have been avoided if a summary judgment procedure existed in Ohio. The trial demonstrated that the courts receive the complaints when the legislature fails to provide the machinery which will enable the judiciary to accomplish its business efficiently.

The instant motions are inspired by the decision of the Supreme Court, announced while these cases were waiting trial, in the case of **Rush v. Maple Heights, 167 Oh St 221,** in which the court reversed paragraph four of the syllabus in the case of **Vasu v. Kohlers, Inc., 145 Oh St**

321, 30 O. O. 542. In effect plaintiffs were retroactively prohibited from splitting damages into separate actions as had been the approved practice  The new rule states that where

"a person suffers both personal injuries and property damage as a result of the same wrongful act, only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act."

By way of dictum the Supreme Court preserves the right of the assignee of a portion of a tort action to proceed independently:

"Upon further examination of the cases from other jurisdictions, it appears that in those instances where the courts have held to a majority rule, a separate cause of action is almost universally recognized where an insurer has acquired by an assignment or by subrogation the right to recover for money it has advanced to pay for property damage." p. 233.

In a subsequent case the Supreme Court affirmed the "indivisible chose in action" theory and held that the injured party who had assigned the property damage claim to his insurer was entitled to proceed and litigate the whole claim, including the assigned interest; further, that upon request the insurer must be made a party even though the statute of limitations expired as to such insurer. **Holibaugh v. Cox, 167 Oh St 340.**

As a result of these decisions the injured party who fails to include all of his damage in a single action clearly waives the items omitted and he is not protected by the exception which recognizes a separate right of action in the assignee.

The rule reverses the practice of requiring the insured to join with his insurer when a separate action is filed by the assignee in cases involving deductible and incomplete coverage in subrogation cases. The reason which required such joinder—that property damage constituted a separate cause of action—no longer exists. Instead of a separate cause of action for property damage there exists only a separate right of action exclusively in the assignee "to prosecute a separate action against the party causing such injury for reimbursement for indemnity monies paid under such contract." Syl. 6. Vasu v. Kohlers, supra.

An injured party may now maintain but one action against a tortfeasor for all damages resulting from a wrong act. Rush v. Maple Heights, supra.

An injured party who files his own action for personal injuries is no longer a proper party in a separate action by his insurer for that portion of the property damage previously assigned to such insurer. It is a fundamental principle of law that "when the reason ceases the rule ceases." There no longer being any reason that permits the joinder of the insured for his excess or deductible interest in a second action by the insurer, the statutory provision requiring joinder of parties with an interest in the subject matter of the litigation has no application. Sec. 2307.18, 2307.20 R. C. Travelers v. Moore, 304 Ky. (466), 456.

And where the injured party obtained a judgment for personal injuries all of his claims are merged in that judgment and he may not

continue as co-plaintiff with his insurer in a **separate** action for any portion of his damage.

If joined in a separate action against the same defendants, commenced prior to the decision in the Maple Heights case, a final judgment in the personal injury action adverse to the injured party is an estoppel by judgment against such insured. He may never relitigate the same indivisible action against the same defendants. Syllabus one, two, and five, Vasu v. Kohlers, supra.

Syllabus 6 of Vasu v. Kohlers, supra, is consistent with the suggestion of the Supreme Court in Rush v. Maple Heights, supra, that the insurer may proceed **alone** in a separate action to recover money paid under its contract, unless an action for the **full loss** was previously filed by the injured party. Holibaugh v. Cox, supra.

        \*        \*        \*        \*        \*

The final question involves the effect of an adverse judgment against the injured party upon the rights of his assignee in a separate action for property damage against the same tort-feasor. This question is one of considerable interest. It caused an equal amount of concern to the court and to counsel who argued the subject for over two hours. The problem is complicated by the recent reversal and by the irreconcilable concepts of privity announced by the Supreme Court. Public policy is a strong influence, especially after a lengthy trial in the principal case, however every effort was made to avoid this consideration in view of the new guide posts available.

The four successful defendants press for judgment against the insurers in the property damage cases based generally upon two theories: (1) that an assignee of a part of a claim is in privity and is bound by a final adjudication in the assignors' action in which event those issues, which have been adjudicated, are conclusive in the action by the insurer; (2) that under the "indivisible" cause of action theory the assignor may control the action for all damages, as indicated in the Cox case, and therefore the assignee is similarly bound in estoppel either by judgment or as to those rights and issues which were finally adjudicated.

The court will discuss the two points separately although at times they inevitably overlap.

        \*        \*        \*        \*        \*

The rule that an assignee whose rights are in privity and derivative in character is bound by a decision adverse to his assignor is a familiar one. The Vasu case seems to restrict this rule unconditionally to interests **acquired after the commencement of the action.** The restriction protects the integrity of a decision and it appears to eliminate or neglect the general rule of res judicata.

Under facts of the Vasu case, the **predecessor** in interest is not estopped by a judgment adverse to the successor unless he was a party or unless he acted for or on behalf of his successor in the prosecution of the action. In the words of syllabus seven and eight of Vasu v. Kohlers, supra:

"Parties in privy, in the sense that they are bound by a judgment, are those who acquired an interest in the subject matter after the be-

ginning of the action or the rendition of the judgment; and if their title or interest attached before that fact, they are not bound unless made parties."

"A grantor or assignor is not bound, as to third persons, by any judgment which such third persons may obtain against his grantee or assignee adjudicating the title to or claim for the interest transferred, unless he participated in the action in such manner as to become, in effect, a party."

In other words, the law of Ohio is that the **injured party** or **assignor** is not bound by estoppel in a separate action as a result of an adverse decision in the assignee's action in which the assignor was not a party.

He may become bound by estoppel in pais. 19 Amer. Jur. 634. This latter rule, is expressed in syllabus eight which forbids one to speak in his own behalf under the circumstances suggested. The mere joinder of the insured and the insurer in a separate action prior to the announcement of the Maple Heights decision does not constitute an estoppel in pais. Assuming for the purpose of argument that an estoppel in pais did arise it would be inequitable to apply this doctrine as a result of a retroactive change of the law. In view of the final conclusion of the court it is unnecessary to decide the subject of estoppel in pais which arises in this case only because the injured party and the insurers were represented by the same attorney. This alone does not appear to be sufficient to create an estoppel in the absence of facts that the insurer supplied the representation and controlled the conduct of the insured's trial so as to, in effect, become a party. At best this condition could only charge both the injured party and the insurer with knowledge of the existence and conduct of the respective actions.

Syllabus eight of the Vasu case may be distinguished because it is limited to a "grantor or assignor" and does not apply to an assignee. The unique definition of privy in syllabus seven appears to have strayed into the case because, within the facts set forth therein, the grantor or predecessor could not have been in privy with his successor. Since privity did not exist the definition of privity is not a part of the law of the case.

Privity is a succession of interest or relationship to the same thing whether created by deed, by contract, by other act, or by operation of law. Privity is dependent upon a succession in interest. Hence, one who has succeeded to an estate or interest is to that extent in privity with his predecessor. Another common form of privity arises where one person holds property, or some interest in property, in subordination to the other.

"But there is an important difference between privity by succession and privity by subordination. In privity by succession the privy takes, commonly at least, as a volunteer, i. e. without value; hence a party, by joining in a collusive judgment, could bind the mere privy. In privity by subordination, however, the privy, commonly at least, has taken for value; hence the fraud of the party to a collusive judgment would not bar him. Fraud bars the wrongdoer and volunteers under him, not innocent purchasers for value.

"The rule, however, under either aspect of privity, is that **a valid judgment is conclusive, not only against the actual parties to the par-**

ticular litigation, but also against all persons who claim under them as privies." Bigelow on Estoppel, 6th Ed., 160.

On the subject of indemnitors, and others affected by a judgment because of contract or other legal duty, Freeman on Judgments, 5th Ed., 972, states:

"In many instances, the relation of the nominal parties to the suit to other persons is such that the latter are conclusively bound by a judgment against the former, in the absence of fraud or collusion, although they are not notified of the pendency of the suit, and are not called upon to conduct its prosecution or defense.

However (page 969), Freeman states:

"A predecessor in interest, as such, is of course not in privity with his successor in interest, and a judgment against the latter whether before or after the transfer should therefore not estop the former on mere grounds of privity. Hence a grantor or vendor is not bound as to third persons by any judgment which they may obtain against his vendee adjudicating the title, unless he participated in the action in such a way as to become in effect a party." (Emphasis added to point out similarity with the Vasu syllabus.)

In support of syllabus seven in the Vasu case the opinion cites Section 89 of the Restatement on judgments. Section 89 covers "a person who, after the beginning of an action, succeeds to the interest of one of the parties." Obviously he is entitled to and bound by the res judicata rule unless he is a holder in due course of a negotiable instrument or unless the judgment was rendered in fraud of his interests. The general rule as to privies commences at section 83.

"A person who is not a party but who is in privity with the parties in an action terminating in a valid judgment is, to the extent stated in sections 84-92, bound by and entitled to the benefits of the rules of res judicata." Section 83, Restatement on Judgments.

"Where a judgment is rendered in an action in which a party thereto properly acts on behalf of another, the other is

"(a) bound by and entitled to the benefits of the rules and res judicata with reference to such of his interests as at the time are controlled by the party to the action;

"(b) not bound by or entitled to the benefits of the rules of res judicata with reference to his interests not controlled by the party to the action." Section 84, Restatement on Judgments.

One who purchases a right after suit is commenced is technically in privity as a party in the litigation because that is the condition of his purchase. Litigation is not essential to the creation of privity. Privity is created by the act of the parties or by operation of law and not by the commencement of an action.

The rule of privity has always been relied upon to prevent the impeachment of a judgment but the important application of the rule is not limited to that specific purpose; it extends to the sound rule of public policy of avoiding vexacious litigation where the relationship of privity exists prior to the commencement of the action.

In the usual situation privity arises upon payment to the insured, at

which time the insurer acquires a legal or equitable interest in an "indivisible" cause of action. The insurer's interest is derived from and in privity.with the insured and what he receives is not an interest in litigation, so as to make him a technical "privy" to a pending action, but a portion of a single claim which is no better than his predecessor possessed. If a man bought the wrong half of a horse he should not complain what his predecessor does with the other half, nor should his predicament force the courts to decide twice who should feed it with possibly contrary and embarrassing results. The failure to apply estoppel to the assignee in the insurance field has produced equally absurd situations.

As pointed out in **Mansker v. Dealers Transport Co.**, 160 Oh St 255, 52 O. O. 119, the trial court may rely too heavily on one part of a syllabus and fail to apprehend the significance of other portions. Syllabus five recites:

"A right, question or fact in issue which was necessarily determined by a court of competent jurisdiction in a judgment which has become final, cannot be disputed or litigated in a subsequent suit between **the same parties**, although the subsequent suit is based upon a different cause of action." (Emphasis added.)

Read in connection with the general if not universal rule the foregoing statement may be amended to include not only the same parties but others not parties who are in privity. This merely returns the court to the question of privity.

Of serious concern is the question whether Vasu v. Kohlers, supra, controls the instant situation. The opinion itself states that the "question has heretofore been before this court on a single occasion but was not decided." In that single occasion the trial court "had rendered judgment on the pleadings in favor of the defendant on the ground that a judgment in favor of the defendant in a former personal injury action brought by the car owner and set up in defendant's answer, was a bar to the second action by the insurer of the car for property damage." The court of appeals reversed on other grounds, and indicated that res judicata did not apply. The Supreme Court affirmed "because the record did not properly present the issue sought to be raised." **North River Ins. Co. v. Redman**, 16 Abs 516, affirmed, 128 Oh St 615, 193 N. E. 347. Thus it appears that the only case precisely in point escaped any ruling in the Supreme Court during those years when the two causes of action theory was in existence.

In the Vasu case the assignee had first obtained an adverse judgment. It became necessary to determine whether the claim of the assignor "is so related to the claim of the assignee * * * that the judgment rendered against the latter in favor of the defendant on the issues of negligence * * * is a bar to the present action of the plaintiff by way of estoppel." The court then stated (344) that the claims were not identical (under the former rule) and therefore that a judgment as to one is not res judicata. This explains the careful use of the word judgment in syllabus seven.

The court proceeds in the Vasu case to discuss the defendant's claim

that if not estoppel by judgment at least the issues of negligence are common in both actions and the finding in the action by the assignee should inure to the benefit of the defendant as against the assignor, citing several cases of the Supreme Court which applied estoppel to parties and their privies.

At this point in the decision the court furnishes syllabus seven and cautions in the final sentence of the same paragraph that—

"It is essential to privity, as the terms is here used, that one person should have **succeeded** to an estate or interest formerly held by another." (Emphasis added.)

In other words, to quote the opinion, "* * * the extent of the estoppel, so far as the privity is concerned, is limited to the controversies affecting **this estate or interest.**" (Emphasis added.) Privity, then, as thus construed and as stated in syllabus seven does not apply to the assignor who did not **succeed** to an estate or interest formerly held by another. As indicated in the authorities referred to earlier, this is the generally accepted definition of privity. The assignee is the party in privity, but the assignor is not. Estoppel is limited to the **estate or interest** transferred.

This points up the importance between acts of the assignee of a part of a claim and those of the owner of the whole from whom the assignee's rights flow. In the Vasu case the facts, and consequently the statements announced, are limited to an assignee who never acquired any right or interest in the whole. How then could the assignor be in privity? Whether by succession or subordination the privy is the assignee or the grantee, not the assignor or the grantor. Recognition by the Vasu case of the inability of the assignee to bind the assignor is implicit in the general rule of law that the contrary is true; the assignor may bind his assignee by his acts and if those acts amount to a final adjudication the assignee is estopped. As already indicated this position is expressed by Freeman on Judgments and the Restatement on Judgments, both of which were cited in the Vasu case. Having concluded that the grantor was not in privity, syllabus seven of the Vasu case is a gratuitous and a misleading statement.

The court finds that the assignee of a claim for property damage is in privity with the assignor and is bound by a final adjudication adverse to or in favor of the injured assignor in a personal injury action.

This conclusion is not inconsistent with the facts and therefore the law as announced in the Vasu case that the injured assignor is not bound by a final adjudication adverse to or in favor of the assignee. Whether the Vasu conclusion is still the law of Ohio on this situation in view of recent decisions is not presently before the court.

＊　　　　＊　　　　＊　　　　＊　　　　＊

The second argument in support of a judgment on the pleadings against the assignee, based upon the indivisibility of the action, is strengthened by the more recent Cox case which recognizes the right of the assignor to file and control the total claim, including the rights of the assignee.

Defendants argued, under syllabus one and two of the Vasu case,

that the Spargurs having obtained a judgment against one defendant on a single or "indivisible" cause of action, their claims and those of their assignees became merged in the judgment in cases number 109911 and 109912; that the insurers must now seek recovery from their assignors even though the Spargurs did not include property damages in their cases and even though the insurers filed (jointly with their assignors) in cases number 109913 and 109914 for the property damage. In this connection it cannot be forgotten that the "single cause of action" described in the Vasu case means the then existing separate cause as described in the now reversed syllabus four. Also that in the Cox case the plaintiff sought recovery for the full amount after property damages had been assigned to the insured. Certainly if the assignor acts for another he must account as trustee, however where the assignor does not do so he should not be required to account for that which he did not request and did not receive, nor under what appears to be the existing law does the insurer lose his right of action because the injured party failed to include the assignee's interest. This argument begs the rule of indivisibility with an exception, such as prevails at the moment.

Defendants are within reason when they argue that if the injured party may sue and recover for all damages and thereby benefit the assignee, why should not that same assignee be similarly bound in a separate action by an adjudication on the issues of negligence? **Holibaugh v. Cox, 167 Oh St 340.** The assignee cannot receive the advantages of his relationship without accepting the disadvantages. If the assignor has sufficient interest in the assigned portion of the claim to recover thereon, does he not stand in a stronger position than required to merely estop the assignee on a part (negligence) of the action? Having recognized the right of the assignor to control the whole, can any part be denied? The answer does not appear to be subject to doubt.

In this connection it is interesting to examine the minority opinion in Ohio prior to the reversal in Rush v. Maple Heights. In **Le Blond v. Auto Ins. Co., 34 Oh Ap 478 (1929),** the dissenting opinion of Judge Ross, now infused with life, forcefully presents the defendants strongest argument:

"The decided weight of modern authority in this country supports the view that damages resulting from a single tort, even though such damages be partly property damages and partly personal injury damages, are, when suffered by one person, the subject of only one suit as against the wrongdoer.

"It is also a well settled law of this state, and it seems to be universally elsewhere so considered, that a claimant will not be permitted to split a single claim or cause of action, which he may possess, and thereby put his opponent to the possible defense of two or more suits thereon.

"Neither the doctrine of subrogation nor the operation of an assignment can be invoked to subject the wrongdoer, though such he be, to splitting of the cause of action and the prosecution of separate actions for each separate item of damage."

The general rule of estoppel has repeatedly been affirmed in Ohio. As In Conold v. Stern, 138 Oh St 352, 20 O. O. 449, the rule of estoppel

operates not only between parties to an action but between parties, and others not parties, as to the derivative rights of the latter which flow from those who were adversary parties in the action. Other decisions cited in the Vasu case are not listed here. Others touched upon by counsel in argument include: **Hixson v. Ogg, 53 Oh St 361; Rabin v. Horstman (2d District) 99 Oh Ap 217, 58 O. O. 391.** In the latter case the court points out that the fact that different damages, as to amount or character, were involved does not affect the validity and force of an adjudication of the initial issue common and controlling as to both.

More pertinent to the immediate question are the decisions of other states which have adopted the majority rule and which support the conclusion that the assignee-insurer is in privity and subject to estoppel. Travelers Indemnity Co. v. Moore, 304 Ky Reports 456, 204 S W 2d 7; Levitt v. Simco Sales Service, 135 A. 2d 910; Saber v. Supplee-Wills Jones Milk Co., 124 A. 2d 620.

By adopting the majority rule that an action in tort is indivisible, the Supreme Court initiated a course which requires a series of other changes in pleading and procedure and which relieves the courts of unnecessary litigation and public criticism. True, the court intimated that it will continue to preserve a right of action in the insured. The preservation of this right is not decsive of the application of res judicata. Res judicata arises when a party has a right of action in a separate suit. It is logical and well within public policy that an adverse finding on either the issue of negligence or contributory negligence in the principal action should estop the insurer in the separate action. This will avoid contrary decisions within an "indivisible" cause of action and prevent a return to the litigious chaos that the former rule promoted.

Here, as in practically all such situations, the assignees were fully aware of the pendency of the actions by the injured parties. The assignees had a right to participate in their assignors' actions and having failed to exercise that right they may not complain irrespective of the outcome of the principal cases.

Where two separate suits arise out of a single cause of action but do not involve the same claim the parties and their privies are not "bound by the judgment" but they may not relitigate similar issues and they may litigate those issues which were not or could not have been resolved in the original action. 32 O. Jur. 2d 58, 30A Amer. Jur. 403. In a subsequent action the insurer and the wrongdoer are bound by a finding on the issue of negligence and contributory negligence. If the finding is adverse to the wrongdoer the court merely assigns for trial the subject of the assignment or subrogation and the extent of the damages.

The four motions of the defendants number two through number five for judgment on the pleadings is sustained as to all of the plaintiffs. Vendrell L. Spargur, Marcia C. Spargur, American Insurance Company and Mayflower Insurance Company.

Since the Spargurs became improper plaintiffs by reversal of law it is only proper to order their dismissal with prejudice, as to the Dayton Power and Light Company, **sua sponte** to avoid quibbling over the reason

or method of their departure from these cases. Since the judgments in Cases No. 109911 and 109912 against the Dayton Power and Light Company are not final, no further action may be taken at the present time as to the first defendant.